THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM BALTITAS
4003 Navahoe Road
Cleveland, Ohio 44121

    and

URSULA BALTITAS
4003 Navahoe Road
Cleveland, Ohio 44121

        Plaintiffs,

    v.

CARRINGTON MORTGAGE SERVICES
c/o CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

        Defendant.

CASE NO. 1:17-cv-183

JUDGE

**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

**JURY DEMAND ENDORSED HEREIN**

The following allegations are based upon Plaintiffs William Baltitas and Ursula Baltitas (collectively "Plaintiffs")'s personal knowledge, the investigation of counsel, and information and belief.  Plaintiffs, through counsel, alleges as follows:

**I.**     **INTRODUCTION**

1.  The Servicer on Plaintiffs' loan contravened a Bankruptcy Court order and violated several federal statutes by erroneously advancing escrow funds, creating a false escrow deficiency in Plaintiffs' mortgage account.

1

2.  Plaintiffs entered into a mortgage loan agreement and signed a promissory note on or about January 26, 2006 with American General Financial Services, which was secured by a mortgage lien on real property Plaintiffs own as their principal primary residence.

3.  On or around January 16, 2009, Plaintiffs filed Chapter 13 bankruptcy in the U.S. Northern Bankruptcy Court.

4.  On or around July 11, 2014, as part of the bankruptcy discharge, the Court entered an Agreed Order between Plaintiffs and Springleaf, the Servicer of the Mortgage at that time.

5.  The bankruptcy agreement ordered the Plaintiffs to obtain their own homeowner insurance and begin paying real estate taxes to the treasurer.

6.  Plaintiffs obtained their own homeowner insurance and began paying real estate taxes to the treasurer.

7.  Defendant erroneously created an escrow account and started advancing payments for taxes and home insurance from the escrow account.

8.  These advances were not authorized by Plaintiffs.

9.  Plaintiffs made numerous attempts to correct the problem but were unsuccessful.

10. Plaintiffs then sent a Qualified Written Request ("QWR"), including a Request for Information and Notice of Error under the Real Estate Settlement Procedures Act on September 21, 2016.

11. Defendant has repeatedly continued to do advance escrow funds, despite being informed of the error.

12. Defendant failed to adequately respond to this QWR.

13. Plaintiffs also requested information under the Fair Debt Collection Practices Act, which Defendant failed to adequately respond.

2

14. Accordingly, Defendant is liable to Plaintiffs for actual and statutory damages, attorneys' fees, and costs under federal law.

## II.    PRELIMINARY STATEMENT

15. Plaintiffs institute this action for actual damages, statutory damages, attorney fees and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 1601, *et seq*., and Regulation X, 12 C.F.R. 1024.

16. Plaintiffs also institute this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant, Carrington ("Defendant") for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, (hereinafter "FDCPA").

## III.    JURISDICTION

17. This Court has jurisdiction for the First Count pursuant to RESPA, 12 U.S.C § 2614, and 28 U.S.C. §§ 1331 and 1337.

18. This Court has jurisdiction for the Second Count pursuant to FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

## IV.    PARTIES

19. Plaintiff William Baltitas is a natural person currently residing within this Court's jurisdiction at 4003 Navahoe Road, Cleveland Heights, Cuyahoga County, Ohio 44121.

20. Plaintiff Ursula Baltitas is a natural person currently residing within this Court's jurisdiction at 4003 Navahoe Road, Cleveland Heights, Cuyahoga County, Ohio 44121.

21. Plaintiff was and is a **person** within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to this transaction.

22. At all times relevant to this transaction, the Plaintiff, William Baltitas was and is a **Consumer** within the meaning of  FDCPA at 15 U.S.C. § 1692a(3).

23. At all times relevant to this transaction, the Plaintiff, Ursula Baltitas, was and is a **Consumer** within the meaning of FDCPA at 15 U.S.C. § 1692a(3).

24. Defendant is a Limited Liability Company organized under the laws of the State of Delaware; with its principal place of business in the State of California.

25. Defendant was and is a **person** within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to this transaction.

26. Defendant was and is a loan **servicer** of Plaintiffs' **federally related mortgage loan** within the meaning of those terms in RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1), respectfully, at all times relevant to this transaction.

27. At all times relevant to this transaction, Defendant was and is a **Debt Collector** within the meaning of 15 U.S.C. § 1692a(6).

28. Defendant obtained the loan when it was allegedly in default.

29. Immediately upon acquiring rights, Defendant treated the loan as if it were in default.

**V.    FACTUAL ALLEGATIONS**

30. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully written here.

31. Plaintiffs entered into a mortgage loan agreement and signed a promissory note on or about January 26, 2006 with American General Financial Services, which was secured by a mortgage lien on real property Plaintiffs own as their principal primary residence.

32. The original servicer, Springleaf Mortgage Services, Inc. ("Springleaf"), proposed a modification offer which included the establishment of an escrow account for the bank to advance payments for taxes and home insurance. This offer was not accepted.

4

33. Because Plaintiffs were currently going through a bankruptcy in the U.S. Northern Bankruptcy Court, the loan modification was never entered into and, therefore, the escrow agreement did not take effect.

34. Although Plaintiffs made their mortgage payments and paid their taxes, Springleaf nevertheless created the escrow account and started advancing payments for taxes and home insurance from the escrow account.

35. On July 11, 2014, as part of the bankruptcy discharge ("Discharge"), the U.S. Northern Bankruptcy Court entered an Agreed Order between Plaintiffs and Springleaf. The bankruptcy agreement ordered the Plaintiffs to obtain their own homeowner insurance and begin paying real estate taxes to the treasurer.  A copy of the Agreed Order is attached as Exhibit A.

36. In accordance with the Discharge, Plaintiffs obtained their own homeowner's insurance and began paying real estate taxes.

37. On or about September 16, 2014, Plaintiffs received correspondence from Springleaf indicating that the servicing of Plaintiffs' loan had been transferred to Select Portfolio Servicing, Inc. ("SPS").

38. On or about October 14, 2016, Plaintiffs received correspondence from SPS indicating a negative escrow balance.

39. Still, Plaintiffs continued to make their monthly mortgage payments and paid their taxes.

40.  On or about June 10, 2016, Plaintiffs received a correspondence from Defendant Carrington Mortgage Services ("Carrington") indicating that the servicing of Plaintiffs' loan had been transferred to Carrington (the "Transfer Letter").  A copy of the Transfer Letter is attached to this Complaint as Exhibit B.

41. The Transfer Letter stated that "The servicing of your Mortgage Loan is being transferred, effective 6/01/2016. This means that after this date, Carrington Mortgage Services, LLC ("CMS"), will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change."

42. On or about July 9, 2016, Plaintiffs received a correspondence ("July Letter") from Defendant Carrington indicating a Notice of Intent to Foreclosure.

43. The July Letter advised Plaintiffs that they are in default and that the sum to cure the delinquency totaled to $12,465.56 plus subsequent payments, late charges, and other fees.

44. On or about August 9, 2016, Plaintiffs received a correspondence ("August Letter") from Defendant Carrington indicating the loan was currently in default.

45. On or about September 15, 2016, Plaintiffs mailed Defendant an FDCPA Demand, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. §1692(g)(b).

46. On or about September 20, 2016, Plaintiffs received a mortgage statement ("September Statement") from Defendant Carrington indicating the loan was currently in default.

47. On or about September 21, 2016, Plaintiffs mailed Defendant a letter that constituted a **qualified written request ("QWR")**, within the meaning of RESPA at 12 U.S.C. § 2605(e)(1)(B).

48. The QWR also constituted a Notice of Error ("NOE") and Request for Information ("RFI") within the meaning of Regulation X, 12 C.F.R. § 1024.35(a) and 1024.36(a).

49. The postage and copying cost that Plaintiff incurred mailing the QWR via certified mail was $26.72, which are actual damages.

50. The cost of counsel's time preparing QWR and reviewing accounting was $5,314.30, which are actual damages.

51. The Notice of Error disputed the unauthorized escrow accounts.

52. The QWR disputed the following errors:

    a.  late fees;

    b.  charges;

    c.  the principal balance, interest charges, escrow charges, and all other fees and charges listed on Mortgage Statements to Plaintiff; and

    d.  Defendant's application of payments.

53. The QWR also requested the following information:

    e.  Detailed itemization of $12,465.56 amount required to cure the delinquency.

    f.  Describe how the escrow was calculated prior to servicing transfer of the mortgage loan to Defendants;

    g.  all notes created by Defendant's personnel reflecting communications with Plaintiff regarding Defendant's claim that the account is in default;

54. Defendant received the QWR on or about September 26, 2016.

55. Defendant's representative Mary Longworth signed that the QWR was received on September 26, 2016.

56. Defendant responded to the QWR on or about November 1, 2016.

57. Defendant never addressed the unauthorized escrow accounts.

58. Defendant did not adequately respond and did not provide Plaintiffs all of the information they requested.

59. Defendant did not provide an itemization constituting the $12,465.66.

60. Defendant did not specifically state why Defendant could not explain how the escrow account was calculated prior to servicing of Plaintiff's mortgage loan.

61. Defendant did not identify how the escrow is currently being calculated.

62. Defendant did not produce any notes created by personnel reflecting communications with Plaintiffs about Defendant's claim that the account was in default.

63. Defendant declined Plaintiff's request to inspect the original Note.

64. Even after Defendant received the QWR and FDCPA Demand, Plaintiffs received a several mortgage statements ("Statements") from Defendant indicating the loan was currently in default.

65. On or about October 18, 2016, Plaintiffs received a mortgage statement ("October Statement") from Defendant Carrington indicating the loan was currently in default.

66. On or about November 18, 2016, Plaintiffs received a mortgage statement ("November Statement") from Defendant Carrington indicating the loan was currently in default.

67. On or about December 19, 2016, Plaintiffs received a mortgage statement ("December Statement") from Defendant Carrington indicating the loan was currently in default.

## VI.   FIRST COUNT - RESPA

68. Plaintiffs incorporate all other paragraphs in this Complaint by reference as though fully written here.

69. For all the reasons stated herein, Defendant violated RESPA and is liable to Plaintiffs for damages.

70. Plaintiffs' correspondence dated September 21, 2016 was a "Qualified Written Request" as defined by 12 U.S.C. § 2605(e)(1).

71. By failing to adequately respond to Plaintiffs' September 21, 2016 QWR, Defendant violated RESPA at 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e); 12 C.F.R. § 1024.36(d).

72. By failing to correct Plaintiff's account by correctly applying her payments and correcting Plaintiff's specified errors, Defendant violated RESPA at 12 U.S.C. § 2605(e)(2).

73. By failing to conduct an investigation of Plaintiff's account after receiving the QWR letters, Defendant violated RESPA at 12 U.S.C. § 2605(e)(2)(B) and (C), 12 C.F.R. § 1024.35(e); 12 C.F.R. § 1024.36(d).

74. By failing to provide Plaintiffs a written explanation that included the reasons why it believed their account to be correct, Defendant violated RESPA at 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35(e).

75. By failing to provide Plaintiffs with the information they requested, Defendant violated Regulation X at 12 C.F.R. § 1024.36(d).

76. Defendant has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605, and Regulation X at 12 C.F.R. § 1024.35(e) and 12 C.F.R. § 1024.36(d).

77. Due to these violations, Defendant is liable to Plaintiffs for their actual damages, statutory damages in the amount of at least $2,000 per violation, plus attorneys' fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**VII.   SECOND COUNT - FDCPA**

78. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

79. For all the reasons stated herein, Defendant violated FDCPA and is liable to Plaintiffs for damages.

80. Defendant was and is subject to the FDCPA at all relevant times.

81. Immediately after acquiring rights to service the mortgage loan, Defendant treated the loan as if it were in default.

82. Defendant engaged in unlawful activity pursuant to 15 U.S.C. § 1692c-f.

83. The August Letter and October, November and December Statements (collectively the "Letter and Statements") are each a separate, actionable communication to a consumer containing false, deceptive, or misleading representations in connection with the collection of the debt in violation of 15 U.S.C. § 1692e, and subsections (2), (5), (8), and (10).

84. The Letter and Statements, as well as Defendant's actions stated herein are false, deceptive, or misleading representations in connection with the collection of the debt in violation of 15 U.S.C. § 1692e, and subsections (2), (5), (8), and (10).

85. The Letter and Statements, as well as Defendant's actions stated herein are attempts to collection amounts and fees not expressly authorized, in violation of 15 U.S.C. § 1692f(1).

86. Defendant's actions stated herein are false, deceptive, or misleading representations in connection with the collection of the debt in violation of 15 U.S.C. § 1692e(2), (5), (8), and (10).

87. Defendant's actions stated herein are attempts to collection amounts and fees not expressly authorized, in violation of 15 U.S.C. § 1692f(1).

88. Plaintiffs have suffered emotional distress, including depression, anxiety, and sleepless nights as a result of Defendant's actions.

89. Defendant is liable to Plaintiffs for their actual damages, statutory damages in the amount of at least $1,000, plus attorneys' fees, and costs of the action, including pursuant to 15 U.S.C. § 1692k(a).

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

90. Assume jurisdiction of this case;

91. Award Plaintiff actual damages including pursuant to 12 U.S.C. § 2605(f)(1)(A);

92. Award Plaintiff maximum statutory damages in the amount of $2,000 including pursuant to 12 U.S.C. § 2605(f)(1)(B);

93. Award Plaintiff attorney's fees and costs of the action including pursuant to 12 U.S.C. § 2605(f)(3);

94. Award Plaintiff actual damages including pursuant to 15 U.S.C. § 1692k(a)(1);

95. Award Plaintiff statutory damages in the amount of $1,000 including pursuant to 15 U.S.C. § 1692k(a)(2)(A);

96. Award Plaintiff attorney's fees and costs of the action including pursuant to 15 U.S.C. § 1692k(a)(3);

97. Declaratory relief regarding the rights and obligations of the parties; and

98. Award such other relief as the Court deems appropriate.

Dated this 26th day of January, 2017.

> Respectfully submitted,
> DOUCET & ASSOCIATES CO., LPA
>
>
> s/ Andrew J. Gerling_____
> Andrew J. Gerling (0087605)
> *Attorney for Plaintiffs William Baltitas and Ursula Baltitas*
> 700 Stonehenge Parkway, 2B
> Dublin, Ohio 43017
> (614) 944-5219 PH
> (818) 638-5548 FAX
> Andrew@TroyDoucet.com

11

**JURY TRIAL DEMANDED**

Plaintiffs respectfully request a jury trial on all triable issues.

s/ Andrew J. Gerling
Andrew J. Gerling (0087605)